**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIHAN WILDER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>-against-<br><br>COMMUNITY MOBILE TESTING, INC., and LABQ DIAGNOSTICS, LLC,<br><br>Defendants. | No:<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT |

Jihan Wilder ("Wilder" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1. This lawsuit seeks to recover overtime wages, agreed upon wages, and underpayment caused by untimely wage payments and other damages for Plaintiff and similarly situated non-exempt hourly positions such as nasal swabbers (collectively, "Hourly Workers") who work or have worked for Community Mobile Testing, Inc. and LabQ Diagnostics, LLC (collectively "LabQ" or "Defendants").

2. Despite being paid on an hourly basis, Defendants required Plaintiff and other Hourly Workers to perform their duties off-the-clock. In that regard, Hourly Workers were instructed by Defendants' management to perform COVID tests for patients even if they showed

1

up at a mobile testing location after Hourly Workers had punched out. As a result of this practice, Hourly Workers were regularly not compensated for all the hours they worked.

3. In addition, Defendants compensated Plaintiff and all other Hourly Workers in New York on a bi-weekly basis.

4. Despite being manual workers, Defendants failed to properly pay Plaintiff and other Hourly Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned.

5. In this regard, Defendants failed to provide timely wages to Plaintiff and all other similarly situated Hourly Workers in New York.

6. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

7. As such, the failure to provide wages owed to Plaintiff and all other similarly situated Hourly Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

8. Plaintiff brings this action on behalf of herself and similarly situated current and former Hourly Workers who elect to opt into this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated Hourly Workers of their lawfully earned wages.

9. Plaintiff brings this action on behalf of herself and all other similarly situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to

remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

10. Individually, Plaintiff seeks to recover damages for discrimination based upon creed/religion retaliation committed by Defendants against Plaintiff in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §8-107 *et seq.* ("NYCHRL").

## THE PARTIES

### Plaintiff

**Jihan Wilder**

11. Wilder is an adult individual who is a resident of the State of New York.

12. Wilder was employed by Defendants as a nasal swabber, an Hourly Worker, in Manhattan, New York earning approximately $19.00 per hour from in or around January 2022 through May 2022.

13. Wilder is a covered employee within the meaning of the FLSA, NYLL, and NYCHRL.

### Defendants

14. Defendants jointly employed Plaintiff and similarly situated Hourly Workers at all times relevant.

15. Defendants have substantial control over Plaintiff's and Hourly Workers' working conditions, and over the unlawful policies and practices alleged herein.

16. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

17. During all relevant times, Defendants' operations are interrelated and unified.

18. During all relevant times, Defendants' shared common management, and were centrally controlled and/or owned by Defendants.

19. During all relevant times, Defendants allowed and instructed Hourly Workers to work at different mobile testing locations controlled and/or owned by Defendants.

20. During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and all Hourly Workers.

21. During all relevant times, Defendants have controlled the labor relations of the LabQ.

22. During all relevant times, Defendants have been Plaintiff and Hourly Workers' employers within the meaning of the FLSA, NYLL, and NYCHRL.

23. Defendants jointly employed at least 50 employees.

24. As a medical facility handling COVID vaccines, Defendants' employees were engaged in handling selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

25. Defendants' annual gross volume of sales or business done was more than $500,000.00.

**Community Mobile Testing, Inc.**

26. Community Mobile Testing, Inc. ("CMT") is a domestic business corporation organized and existing under the laws of New York.

27. CMT's principal executive office is located at 140 58th St., Bldg. A Suite 3L, Brooklyn, New York 11220

28. CMT was and is a covered employer within the meaning of the FLSA, NYLL, and NYCHRL and at all times relevant, employed Plaintiff and similarly situated employees.

29. CMT has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

30. CMT applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

**LabQ Diagnostics, LLC**

31. LabQ Diagnostics, LLC ("LD") is a domestic business corporation organized and existing under the laws of New York.

32. LD's principal executive office is located at 140 58th St., Bldg. A Suite 3L, Brooklyn, New York 11220

33. LD was and is a covered employer within the meaning of the FLSA, NYLL, and NYCHRL and at all times relevant, employed Plaintiff and similarly situated employees.

34. LD has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

35. LD applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

## JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

37. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

38. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

39. Plaintiff brings the First Cause of Action and FLSA claim, on behalf of:

> All current and former Hourly Workers employed at LabQ between March 5, 2021 and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective).

40. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective overtime compensation.

41. Consistent with Defendants' policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid the proper overtime compensation for all hours worked beyond 40 per workweek.

42. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

43. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, premium overtime wages for all hours worked in excess of 40 hours per workweek.

44. A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

45. Defendants knew or should have known that their wage and hour practices relating to Hourly Workers violated the FLSA's prohibition against requiring employees to work off-the-clock. In this regard, district courts around the country, including district courts throughout New

York, have dealt with hundreds of similar violations against comparable restaurants.

46. Defendants failed to undertake any diligent review of its wage and hour practices relating to Hourly Workers.

47. Defendants did not consult with counsel regarding their wage and hour practices relating to Tipped Workers.

48. As a result, Defendants acted willful due to their reckless disregard of their conduct.

## **NEW YORK CLASS ACTION ALLEGATIONS**

49. Plaintiff brings the Second, Third, and Fourth, Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as Hourly Workers for LabQ in New York from March 5, 2018 through the date of final judgment in this matter (the "New York Class").

50. The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

51. There are more than fifty members of the New York Class.

52. Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

53. Plaintiff and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

54. Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

55. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

56. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

57. Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

   (a) Whether Defendants failed to pay Plaintiff and the NYLL Class agreed upon wages for all of the hours they worked;

   (b) Whether Defendants compensated Plaintiff and the NYLL Class for all hours worked in excess of 40 per workweek;

   (c) Whether Defendants correctly compensated Plaintiff and the New York Class on a timely basis; and

   (d) Whether Defendants failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

58. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Wage Claims**

59. Wilder was employed by Defendants as a nasal swabber and worked at Defendants' mobile locations in Manhattan, New York from in or around January 2022 through May 2022.

60. As a nasal swabber, Wilder was paid $19.00 per hour.

61. Throughout her employment, Wilder's schedule varied, but she has generally worked anywhere from 35 to 52 hours per week.

62. Despite being paid by the hour, Wilder was not paid for all the hours she worked. In that regard, if a patient arrived at a mobile testing location after it was closed, Wilder, and other Hourly Workers were required to reopen and perform the requisite tests. During these times, Wilder was not punched in and not compensated for the work performed. As a result, Wilder and other Hourly Workers were not compensated for all of the regular and overtime hours that they worked.

63. This occurred approximately two to three times per week and accounted for up to an hour of uncompensated time.

64. Defendants were aware of this policy as Wilder was informed by Niska (last name unknown), a supervisor, that Hourly Workers were required to perform tests even after closing and punched out because the company would lose $300 through $500 per patient if the test were not performed.

65. During Wilder's employment, over twenty-five percent of her duties were physical tasks, including but not limited to: (1) standing for long periods; (2) performing nasal swabbing tests; (3) general cleaning; (4) lifting; and (5) packaging specimens.

66. Despite regularly spending more than twenty-five percent of her shift performing these physical tasks, Wilder has been compensated by Defendants on a bi-weekly basis.

67. In this regard, Defendants failed to pay Wilder her wages earned as required by NYLL § 191(1)(a).

68. As a result of Defendants' untimely wage payments, Wilder was underpaid every corresponding period where Defendants paid Wilder on an untimely basis.

69. Moreover, Wilder was denied the time-value of her money by Defendants' underpayments. Wilder was unable to invest, save, or purchase utilizing the wages she earned and was owed.

70. For instance, Wilder was unable to make timely payments of her credit card bills, and fell behind by not being able to pay them because her wages were held for an extra week.

71. Wilder routinely went grocery shopping once a week, but did not receive her pay every week, which impaired her ability to purchase groceries.

72. Defendants also failed to furnish Wilder with accurate statements of wages with each payment of wages as required by the NYLL because they did not reflect the correct number of hours she worked.

73. Defendants' failure to provide Plaintiff with accurate wage statements did not permit Plaintiff to accurately determine the amount Plaintiff was underpaid. This allowed to Defendants to continue their unlawful pay scheme.

**Discrimination and Retaliation**

74. At all times relevant, Wilder's disparate treatment based on her creed/religion began when at the start of employment. Defendants were aware that Wilder was a devout Muslim as they granted her religious exemption to the COVID-19 vaccine.

75. On her first day of employment, Wilder was onboarded by Niska (last name unknown), a supervisor. Niska made several comments about how Wilder's first name was too

hard to pronounce and insisted on calling her "J." Despite Wilder's protests, Niska consistently mispronounced Wilder's first name and called Wilder "J," but did not give a new name to the other employee being onboarded Tanisha (last name unknown). This continued throughout Wilder's employment. Mispronunciation and/or renaming an individual is a known microaggression.[1]

76.  On or around May 2, 2022, Wilder was observing Eid-al-Adha. Wilder took her scheduled break to go to a Mosque to pray. Upon her return, Niska was at the mobile lab and demanded to know where Wilder had been. Wilder explained where she had been and that she was on her scheduled break. Niska accused Wilder of being late to return from her break. Wilder explained that she was not. Despite this, Niska sent Wilder home. A week later, Wilder was terminated.

77.  As such, Defendants discriminated against Wilder's creed/religion.

## FIRST CAUSE OF ACTION
Fair Labor Standards Act – Overtime Wages
(Brought on behalf of Plaintiff and the FLSA Collective)

78.  Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

79.  The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

80.  Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA for all hours worked over 40 in a workweek by

---

[1] National Library of Medicine, *Say My Name: Understanding the Power of Names, Correct Pronunciation, and Personal Narratives*, Salma Dali, Nov. 29, 2022, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9705275/#:~:text=The%20mispronunciation%20of%20names%20can,be%20experienced%20as%20a%20microaggression.&text=The%20links%20between%20names%20and%20racial%20discrimination%20are%20deeply%20rooted%20in%20history. (last viewed March 5, 2024) ("The mispronunciation of names can undermine one's identity, similar to misgendering. Chronic mispronunciation can lead to feeling marginalized, not accepted or included, and undervalued and can be experienced as a microaggression.").

suffering and permitting Plaintiff and the FLSA Collective to work off-the-clock.

81. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## SECOND CAUSE OF ACTION
New York Labor Law – Overtime Pay
(Brought on behalf of Plaintiff and the New York Class)

82. Plaintiff realleges and incorporates by reference the preceding paragraphs of this complaint.

83. Plaintiff and the New York Class have regularly worked more than forty hours per week.

84. Defendants failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL for all hours worked over 40 hours per week.

85. As a result of the common policies described above Defendants have violated the overtime provisions of the NYLL with respect to Plaintiff and the New York Class by: suffering and permitting Plaintiff and the New York Class to work off-the-clock without compensation.

86. Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
New York Labor Law – Failure to Pay Agreed Upon Wages
(Brought on behalf of Plaintiff and the New York Class)

87. Plaintiff realleges and incorporates by reference the preceding paragraphs of this complaint.

88.     Pursuant to NYLL, Article 6 § 191(1)(d), Defendants have been required to pay Plaintiff and the New York Class the wages they have earned in accordance with the agreed terms of their employment.

89.     Defendants failed to pay Plaintiff and the New York Class the earned wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiff's employment.

90.     As a result of the common policies described above Defendants violated the agreed upon wage provisions of the NYLL with respect to Plaintiff and the New York Class by: suffering and permitting Plaintiff and the New York Class to work off-the-clock without compensation.

91.     Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants their unpaid and/or recaptured agreed-upon wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

92.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.     The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

94.     Defendants failed to pay Plaintiff and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

95.     Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their untimely

13

wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
**(Brought on behalf of Plaintiff and the New York Class)**

96. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

97. Defendants failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

98. Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## SIXTH CAUSE OF ACTION
### New York City Human Rights Law – Unlawful Discrimination
**(Brought on behalf of Plaintiff, individually)**

99. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

100. By and through their course of conduct, Defendants, their managers, agents and/or

14

employees' agents, unlawfully discriminated against Plaintiff because of her religion/creed in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*.

101. The conduct described in this Complaint was unwelcome and opposed by Plaintiff.

102. The unlawful discrimination was in contravention of Defendants' own internal policy.

103. Defendants refused to provide Plaintiff reasonable religious accommodations and and/or failed to participate in an interactive process regarding reasonable religious accommodations.

104. Defendants did not effectively communicate, follow, enforce or properly instruct their managers, agents and/or employees of their policy against discrimination.

105. Defendants are directly and vicariously liable for said unlawful discrimination based on Niska's actions.

106. As a direct and proximate result of Defendants' unlawful discriminatory actions, Plaintiff has suffered damages and injuries, including, but not limited to, loss of pay and emotional distress.

107. That the aforesaid conduct of Defendants, their managers, agents and/or employees engaged in such discrimination intentionally and maliciously, and showed a deliberate, willful, wanton and reckless disregard of Plaintiff, and deprived her of his rights under the New York City Human Rights Law, thereby entitling Plaintiff to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
**New York City Human Rights Law – Retaliation**
**(Brought on behalf of Plaintiff, individually)**

108. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

109. By and through their course of conduct, Defendants, their managers, agents and/or employees' agents retaliated against Plaintiff after she complained about discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*.

110. Plaintiff's complaints constitute a protected activity under the NYCHRL.

111. Defendants, their managers, agents and/or employees engaged in such conduct intentionally and maliciously, and showed a deliberate, willful, wanton and reckless disregard of Plaintiff's rights under the New York City Human Rights Law, by retaliating against her.

112. Defendants did not effectively communicate, follow, enforce or properly instruct its agents, managers and/or employees of any policy against retaliation.

113. Defendants are directly and vicariously liable for said retaliation based on Niska's actions as supervisor, and Defendants' action as Plaintiff's employer.

114. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered damages and injuries, including, but not limited to, loss of pay and emotional distress.

115. That the aforesaid conduct of Defendants, their managers, agents and/or employees engaged in such retaliation intentionally and maliciously, and showed a deliberate, willful, wanton and reckless disregard of Plaintiff, and deprived her of her rights under the New York City Human Rights Law, thereby entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Hourly Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through

and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

      B.      Unpaid overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

      C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

      D.      Designation of Plaintiff as the representative of the New York Class and counsel of record as Class Counsel;

      E.      Unpaid overtime compensation, agreed upon wages and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

      F.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

      G.      Statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiff and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

      H.      An award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, seniority, and other benefits of employment;

      I.      An award of damages in an amount to be determined at trial, plus prejudgment

interest to compensate Plaintiff for all non-monetary damages, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, anxiety, loss of self-esteem, loss of self-confidence, loss of personal dignity and any other physical and mental injuries;

J.  An award of punitive damages in an amount to be determined at trial;

K.  Prejudgment and post-judgment interest;

L.  Reasonable attorneys' fees and costs of the action; and

M.  Such other relief as this Court shall deem just and proper.

Dated: New York, New York
March 5, 2024

Respectfully submitted,

/s/ *Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against LabQ, and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.



Jihan Wilder (Mar 4, 2024 14:12 EST)

Signature

# Jihan Wilder

Full Legal Name (Print)